IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHIL D. MILLS, | ) | Case No. 5:24-cv-00680 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| WARDEN HAROLD MAY[1], | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      Introduction

On April 8, 2024, Petitioner Phil D. Mills ("Mills"), a prisoner in state custody, filed a pro se petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF Doc. 1). On November 22, 2024, Respondent filed his Return of Writ (ECF Doc. 8) and the state court record (ECF Doc. 9-1). Mills filed his Traverse on February 10, 2025. (ECF Doc. 11). This matter is therefore ripe for review.

The District Court has jurisdiction over the petition under § 2254(a). On July 23, 2024, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and

---

[1] In the Return of Writ, Respondent asserts that Mills is housed at Richland Correctional Institution and that Angela Stuff, not Harold May, is the Warden of that facility. As such, Angela Stuff is the proper respondent to Mills' Petition. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004).

Recommendation. (Non-document entry of July 23, 2024). I recommend that the District Court dismiss all of Mills' grounds for relief because each of them is procedurally defaulted.

## II.     Factual Background

Ohio's Ninth District Court of Appeals detailed the facts of the case on direct appeal. These factual findings are presumed correct unless Mills rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Ninth District Court of Appeals presented the facts as follows:

{¶2} In July 2010, the victim in this case returned home to let his dog out after being released from school early. He entered his home through the basement-level garage and paused to sort through his mail. He then heard footsteps above him, so he looked up the basement stairs and saw someone's feet in the doorway. That individual, whom the victim described as a black male wearing a mask, then cracked the basement door open, pointed a gun at the victim, and said "Ay, ay, ay[.]" The victim immediately ran out of his home through the garage and ran to his neighbor's house. Meanwhile, the intruder fled the house on foot. A mailman saw the intruder fleeing and attempting to secure something in his waistband. The mailman could not see the intruder's face, but described him as being about 5′7″ tall.

{¶3} Shortly thereafter, police arrived at the scene. During their search of the nearby area, police discovered a loaded gun, a ski mask, pepper spray, and a pry bar. Police tagged those items as evidence and later submitted them for DNA testing. Police also located three possible suspects and presented them to the victim. The victim, however, was unable to positively identify any of the suspects as the intruder because the intruder's face had been covered with a mask.

{¶4} Upon re-entering his home, the victim noticed that two back windows had been broken, his bedroom safe had been opened, the rings contained therein had been taken, and a bullet hole was in his bedroom wall. The police retrieved the bullet from the wall, which a firearms expert later determined was discharged from the gun the police found.

{¶5} The case went cold until the police received a CODIS hit in 2011, indicating a possible DNA match with Mr. Mills. Despite receiving the hit in 2011, the police did not obtain a DNA sample from Mr. Mills until 2016. The results of the DNA testing indicated that Mr. Mills's DNA was on the handle of the gun, as well as the ski mask.

{¶6} A grand jury indicted Mr. Mills for one count of aggravated burglary in violation of Revised Code Section 2911.11(A)(2) with an accompanying firearm specification, one count of aggravated robbery in violation of Section 2911.01(A)(1) with an accompanying firearm specification, and one count of having weapons while under disability in violation of Section 2923.13(A)(3). Mr. Mills pleaded not guilty and the matter proceeded to a jury trial.

{¶7} At trial, the State presented testimony from several witnesses, including the victim, as well as the mailman who saw the intruder running from the victim's home. A lieutenant with the Akron Police Department also testified, stating that Mr. Mills is 5′7″ tall, which was consistent with the mailman's description of the intruder. During its examination of the victim and the lieutenant, the State introduced pictures of the crime scene, as well as aerial images that showed the surrounding area.

{¶8} The State also presented testimony from a DNA expert, who indicated that the DNA samples obtained from the handle of the gun and the ski mask matched Mr. Mills, and that Mr. Mills's DNA was the "major contributor" to those items. She also testified that those items contained additional DNA, but that it was not sufficient for comparison. She further testified that the swabs taken from the pry bar and the trigger of the gun contained no DNA profile. Additionally, as previously noted, a firearms expert testified that the bullet the police retrieved from the victim's bedroom wall was fired from the gun that the police found.

{¶9} The defense stipulated that Mr. Mills had previously been convicted of a felony-drug offense for purposes of having weapons while under disability. The defense then presented testimony from one witness. That witness, who is serving a life sentence for aggravated murder, testified that he committed the crime.

{¶10} The jury ultimately found Mr. Mills guilty.

*State v. Mills*, No. 28954, 2019 WL 1062455, *1-*2 (Ohio Ct. App. March 6, 2019) ("*Mills I*").

## III.     State Court History

### A.     Trial Proceedings

On August 26, 2016, Mills was indicted for aggravated burglary in violation of Ohio

Revised Code ("O.R.C.") § 2911.11(A)(2); aggravated robbery in violation of O.R.C.

§ 2911.01(A)(1); and having weapons while under disability in violation of O.R.C.

§ 2923.13(A)(3). (ECF Doc. 8-1, p. 6). The aggravated burglary and robbery counts contained a

firearm specification pursuant to ORC § 2941.145. (*Id.*). Mills, represented by counsel, pled not guilty. (*Id.* at p. 9).

The case proceeded to a jury trial on December 4, 2017. (*Id.* at p. 11). Trial continued until December 7, 2017, when the jury began deliberations. (*Id.*). The following morning, the jury returned a verdict of guilty on all three counts. (*Id.*). The court sentenced Mills to an aggregate prison term of nine years on January 16, 2018. (*Id.* at pp. 13-16).

### B.    Appellate Proceedings

Mills appealed his conviction to Ohio's Ninth District Court of Appeals on February 20, 2018. (*Id.* at p. 17). On appeal, he raised the following two assignments of error:

Appellant's conviction is against the manifest weight of the evidence.

Appellant was denied a fair trial due to ineffective assistance of counsel.

(*Id.* at p. 26). In his ineffective assistance of counsel assignment of error, Mills specifically argued as follows:

> It is evident from the record that trial counsel failed at the pretrial level to raise any substantive issues to which could have entitled Mr. Mills to relief. It should be noted that all that trial counsel filed a pretrial basis was two (2) motions to continue. It is evident that trial counsel received some discovery, but it is unclear as to when it was requested and when it was received since a Demand for Discovery does not appear on the docket. If suppressible issues existed because of the delayed prosecution and/or preindictment delay, they were never raised. Most startling is that the issue of delayed prosecution and/or pretrial delay was not raised by trial counsel until his cross examination of the State's final witness at trial. The delayed prosecution and/or preindictment delay had to have been challenged at the pretrial level, if only to have preserved the issue for appeal. Trial counsel's performance does not meet an objective standard of reasonableness in this regard.
>
> Trial counsel's only other filings were the issuance of a subpoena for Elohim El-Jones and the instructions for service of that subpoena just prior to Mr. Mills waiver of speedy trial on October 31, 2017. (Td. At 48). Between that date and the commencement of trial on December 4, 2017 there are no entries on the docket which would be attributed to trial counsel.

4

Strikingly absent is a request or motion for a jury view. Given the testimony of the chaotic scene in the neighborhood and at Mr. Keith's residence, a request for a jury view would be objectively reasonable in this case. Failure to make such a request in this instance reflects upon trial counsel's performance and how it was deficient in this instance. Mr. Keith testified regarding the way his residence is situated on the lot, the manner of ingress and egress, the layout of his residence and the way the intruder fled. Mr. Faverty testified as to where he was when he heard the commotion, where he saw the intruder go and how he chased the intruder. Officer Schnee testified as to his search for the intruder and his ultimate discovery of a silver handgun, a prybar, pepper spray and a black hat and the way he secured the location of those items.

The locations in question were all proximate to each other and if viewed would have aided the jury in their understanding of the evidence and quite possibly kept them from losing their way. It was a simple request that the trial court would have likely granted. If it were requested and denied that would be in the record and the issue would have been preserved for appeal. Trial counsel's performance does not meet an objective standard of reasonableness in this regard.

In his opening statement which lasts a total of 48 lines of trial transcript (Tr. at 143-145), roughly less than sixty (60) seconds, Trial counsel failed to even advise the jury that the defense was going to present Mr. El-Jones as a witness would admit to the crime. Putting the jury on notice that a third-party admission was going to be made would be critical to the jury's evaluation of the evidence put forth by the State and the jury's evaluation of the credibility of the State's witnesses. This would be critical knowing that the State's evidence was going to include testimony of DNA being found on the revolver and mask that belonged to a second unknown individual. Again, trial counsel's performance does not meet an objective standard of reasonableness in this regard.

In his cross examination of Ms. Viola and Mr. Chappell, both forensic scientists employed by BCI, trial counsel appears to rely on his own perceived acumen of forensic science to challenge the forensic experts. Unfortunately, he did not have the acumen to do so and a defense expert in DNA should have been employed. Trial counsel's cross examination of the firearm expert was simply ill-advised. It is evident from the record that trial counsel lacked the fundamental knowledge of forensic firearm examination. The State's expert did not. The testimony of Mr. Chappell (Tr. at 245-293) conclusively proved that the Taurus Ultra-Lite found by Officer Schnee fired the bullet found in Mr. Keith's bedroom wall. Rather than focus on facts such as the Taurus Ultra-Lite being fully loaded at the time of the recovery of the weapon and the potential DNA examination of the cartridges, trial counsel engaged in an uninformed cross examination of lands and grooves. He went so far as to challenge the use of a comparison

microscope, a tool that was invented ninety-two (92) years prior to Mr. Mills' trial. Such an examination was not reasonable under the circumstances. Trial counsel's performance does not meet an objective standard of reasonableness in this regard. Trial counsel's challenge to the DNA testimony was more skillful, but he again became enamored with the intellectual debate he was having with Ms. Viola. It is undisputed that Mr. Mills' DNA are on the Taurus Ultra-Lite. It is also undisputed that an unknown individual's DNA are on the same items. At no time does trial counsel inquire as to Ms. Viola's examination of the DNA on the cartridges. That is a glaring omission, particularly because Mr. Mills' DNA was on the handle or grip of the revolver but not on the trigger. A DNA evaluation of the cartridges, which trial counsel should have requested upon his review of the expert report, was never done. Trial counsel's performance does not meet an objective standard of reasonableness in this regard.

Trial counsel was not able to overcome Ms. Viola's testimony without a defense expert. When juries hear from only one expert, their choice is simple. When there are competing experts, the task of the jury becomes more complicated because there will be differing expert opinions. In this instance it would be reasonable to expect a defense expert to focus on the unknown DNA; to challenge Ms. Viola on her opinion that Mr. Mills was a major contributor; and to analyze and offer testimony on and DNA found on the cartridges, or the significance of there not being any DNA on the cartridges. Trial counsel's performance does not meet an objective standard of reasonableness in this regard.

 In its totality, trial counsel's performance was defective, and he made errors so serious that trial counsel was not functioning as "counsel" as guaranteed Mr. Mills by the Sixth Amendment of the United States Constitution. The resulting consequence was that Mr. Mills was denied a fair trial.

(*Id.* at pp. 35-38).

The State of Ohio filed its appellee brief on October 5, 2018. (*Id.* at pp. 40-71). Ohio's Ninth District Court of appeals overruled each of Mills' assignments of error and affirmed his conviction on March 6, 2019. (*Id.* at pp. 78-86; *see also Mills I*, No. 28954, 2019 WL 1062455).

Mills, acting pro se, moved the state appellate court for reconsideration of its opinion of March 15, 2019. (*Id.* at pp. 87-94). The State of Ohio opposed the motion on March 20, 2019. (*Id.* at pp. 95-96). Mills filed a reply brief in support of his motion on April 2, 2019. (*Id.* at pp.

97-100). The appellate court denied Mills' motion for reconsideration on July 23, 2019. (*Id.* at pp. 107-09).

Mills, pro se, appealed to the Ohio Supreme Court on August 21, 2019. (*Id.* at p. 110). Mills raised the following three propositions of law:

Proposition of Law No. 1

Trial counsel's failure to file a pre-trial motion to dismiss and hire a DNA scientist as an expert witness, created a breach of the Ohio and U.S. Constitutions (Article 1 – Section 10 and Amendment 6, respectively).

Proposition of Law No. 2

A guilty verdict, determined by a [*partial jury*], during a jury trial, without concluding that the elements were proven to them beyond a reasonable doubt are violations of the Ohio and U.S. Constitutions (Article 1 – Section 10 and Amendment 6, respectively).

Proposition of Law No. 3

Failure of the appeals court to order a new trial based on the merits of either assignment of error is an abuse of discretion (violation of U.S. Constitution Amendment 14, Section 1).

(*Id.* at p. 113). The state of Ohio did not respond. The Ohio Supreme Court declined to accept jurisdiction on October 15, 2019. (*Id.* at p. 136).

### C.  Application for Reopening Proceedings

Mills, pro se, filed an Application to Reopen his direct appeal pursuant to Ohio Appellate Rule 26(B)(1) on May 20, 2019, arguing that he received ineffective assistance of appellate counsel.[2] (*Id.* at p. 791). The State of Ohio opposed Mills' application on July 23, 2019. (*Id.* at pp. 800-37).

---

[2] The state court record also contains a Motion to Strike an April 29, 2019 Application for Reopening to replace with an updated Application. (*Id.* at. p. 789). The April 29, 2019 application was stricken from the record on July 3, 2019.  (*Id.* at pp. 828-29).

The appellate court granted Mills' application on September 9, 2019, finding that he met his burden of establishing a genuine issue of ineffective assistance of appellate counsel and appointed counsel to represent him. (*Id.* at pp. 838-41).

Mills, through counsel, filed his appellate brief on March 17, 2020, assigning the following as error:

> APPELLANT WAS PREJUDICED BY THE FAILURE OF APPELLATE COUNSEL TO ASSIGN AS ERROR THAT TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO FILE A MOTION TO DISMISS COUNT 3, HAVING WEAPONS WHILE UNDER DISABILITY, WHEN THE SIX-YEAR STATUTE OF LIMITATIONS PERIOD HAD EXPIRED PRIOR TO THE FILING OF THE INDICTMENT.
>
> APPELLANT WAS PREJUDICED BY THE FAILURE OF APPELLATE COUNSEL TO ASSIGN AS ERROR THAT TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT AT THE SENTENCING HEARING BY NOT REQUIRING THE TRIAL COURT TO PROPERLY GIVE THE APPELLANT ALL THE REQUIRED NOTIFICATIONS CONCERNING POST-RELEASE CONTROL.

(*Id.* at p. 843). The State of Ohio filed its brief on April 21, 2020. (*Id.* at pp. 861-79). The appellate court affirmed Mills' convictions but remanded the case for a limited resentencing regarding the imposition of post-release control on January 13, 2021. (*Id.* at pp. 885-91; *State v. Mills*, No. 28954, 2021 WL 118564 (Ohio Ct. App. Jan 13, 2021 ("*Mills II*")).

Mills appealed, pro se, to the Ohio Supreme Court on February 16, 2021. (*Id.* at p. 892). He raised the following proposition of law:

> Proposition of Law No. I: The initiation of the corpus delicti in *any* felony, weapons offense, pursuant to ORC 2923 is discovered when a competent person other than the wrongdoer, or someone equally at fault, has knowledge of both the act and its criminal nature. (The appellate court's ruling on this issue was unreasonable (when new appellate counsel addressed initial appellate counsel's failure to raise as an assignment of error trial counsel's deficient and prejudicial performance (at the trial court level).)

(*Id.* at p. 895 (certain marks omitted)). The State of Ohio opposed on March 16, 2021. (*Id.* at pp. 921-28). The Ohio Supreme Court declined jurisdiction on April 27, 2021. (*Id.* at p. 930; *State v, Mills*, No. 2021-0212, 166 N.E.3d 1264 (Ohio 2024) (table)).

### D. Post-Conviction Relief Proceedings

Mills filed a pro se petition for post-conviction relief on March 11, 2019. (*Id.* at pp. 137-66). Mills raised the following as his grounds for relief:

> PETITIONER'S 5th AMENDMENT RIGHTS (U.S. CONSTITUTION) AND RIGHTS OF THE OHIO CONSTITUTION (ARTICLE 1, SECTION 10) WERE ABRIDGED WHEN JURISDICTION OF THE COURT OF COMMON PLEAS, PURSUANT TO ORC 2931.03, WAS NEVER INVOKED, BECAUSE THE INDICTMENT WAS NOT DELIVERED - RETURNED - TO A COMMON PLEAS COURT JUDGE (JUDGE PRESIDING OVER THE GRAND JURY), AS REQUIRED BY CRIM R. 6(F) AND OHIO REV. CODE 2939.22, THUS THE JUDGEMENT OF CONVICTION IS VOID AB-INITIO.

> Petitioner was deprived Effective Assistance of Counsel (Article I, Section 10 and the 6th Amendment of the Ohio and United States Constitutions, respectively) when counsel failed to file a pre-trial motion to dismiss or [declare] when counsel orally requested a rule 29 acquittal at Petitioner's trial, that the Procedural Due Process Clause (Article 1, Section 16 of the Ohio Constitution and the 5th and 14th Amendments of the United States Constitution), Substantive Due Process Clause (Article 1, Section 16 of the Ohio Constitution and the 5th and 14th Amendments of the United States Constitution) and the Equal Protection Clause (Article 1, Section 2 and the 14th Amendment of the Ohio and United States Constitutions, respectively) were all abridged, causing a deprivation of Petitioner's fundamentals rights guaranteed by the United States and Ohio Constitutions.

> Petitioner was deprived effective assistance of counsel in violation of the United States and Ohio Constitutions (Sixth Amendment and Section 10-Article 1, respectively) when counsel failed to subpoena a psychologist, as an expert witness, after speaking with Elohim El-Jones [prior] to his testimony at trial.

> Petitioner was deprived effective assistance of counsel in violation of the United States and Ohio Constitutions (Sixth Amendment and Section 10-Article 1, respectively) when counsel failed to gather information on Elohim El-Jones, proving that he fit the description of the assailant described by the victim.

(*Id.*). Mills moved the trial court to "proceed to summary judgment" on March 21, 2019, arguing that there was no need for response by the State of Ohio. (*Id.* at pp. 628-30). The same day, the State of Ohio moved to dismiss Mills' petition for post-conviction relief. (*Id.* at pp. 631-42).

Mills filed a motion for default judgment on June 7, 2019, requesting the trial court to dismiss and vacate his sentence for lack of subject matter jurisdiction, dismiss his charges with prejudice, and grant him a new trial due to the State of Ohio's failure to respond to his motion for summary judgment. (*Id.* at pp. 648-50).

On August 2, 2019, Mills filed a "Motion for Judicial Notice pursuant to Evidence Rule 201(A), (B)(2), (D), (E), and (F)" requesting that the trial court take judicial notice that "Appellant's Due Process and Equal Protection rights were violated (and a cognizable/entitled liberty interest was breached) due to the delay in commencing prosecution, when notice was issued to A.P.D., by BCI&I, while appellant was incarcerated . . . only waiting until appellant was released and charged with a new felony (that derived from a traffic stop)." (*Id.* at pp. 654-56). The State of Ohio opposed the motion on August 9, 2019. (*Id.* at pp. 689-90). Mills responded in support of his motion on August 21, 2019. (*Id.* at pp. 691-92).

The trial court denied each of Mills' motions including his petition for post-conviction relief and granted the State of Ohio's Motion to Dismiss on September 14, 2020. (*Id.* at pp. 693-94). In doing so, the court found that the grounds Mills asserted were barred by res judicata because they were raised or could have been raised in his direct appeal and because he did not set forth any new evidence for the court to consider. (*Id.*).

Mills appealed, pro se, the trial court's denial of his petition. (Tr. 695). In his appellate brief, Mills raised the following assignments of error:

> The trial court erred by declaring that the Appellant's petition for post-conviction relief was barred via the res judicata doctrine.

> The trial court abused their discretion by dismissing the Appellant's petition for post-conviction relief (which is supported by competent and credible evidence therefore, warranting and evidence hearing).

(*Id.* at p. 699 (certain marks omitted)). The State of Ohio filed its brief on January 11, 2021. (*Id.* at pp. 720-48). The appellate court affirmed the trial court's denial on June 9, 2021, finding that the court properly utilized the doctrine of res judicata to deny the petition. (*Id.* at pp. 753-60).

Mills appealed, pro se, to the Ohio Supreme Court on July 16, 2021. (*Id.* at p. 761). In his memorandum in support of jurisdiction, Mills raised the following two propositions of law:

> Proposition of Law No I: Evidence pursuant to Appellate Rule 9(A)(1), dehors the record, in a timely filed petition for post-conviction relief, does not fall under the res judicata doctrine. To determine such, by the lower courts, is an abuse of discretion.

> Proposition of Law No. II: An evidence hearing should have been granted pursuant to Ohio Revised Code 2953.20 (D),(F) and (H) and 2953.22 (given the competent and credible evidence submitted), to further determine if counsel's failures changed the outcome of Summit County Common Pleas case no. CR-2016-08-2784.

(*Id.* at p. 764 (certain marks omitted)). The Ohio Supreme Court declined jurisdiction on September 14, 2021. (*Id.* at p. 788).

### E.    Motion for a New Trial Proceedings

On April 22, 2022, Mills field a Motion for Leave to File a Motion For New trial, (*id.* at. pp. 931-45) and a second petition for post-conviction relief (*id.* at pp. 1031-44), pro se. The State of Ohio opposed Mills' motion for a new trial on May 2, 2022. (*Id.* at pp. 1073-76). The same day, the State of Ohio moved to dismiss Mills' second post-conviction petition. (*Id.* at pp. 1077-78). Mills responded on May 19, 2022. (*Id.* at pp. 1079-82). The trial court denied both of Mills' motions on March 8, 2023. (*Id.* at pp. 1083-90).

Mills, pro se, appealed the trial court's judgment on April 3, 2023. (*Id.* at p. 1091). In his appellate brief he raised the following assignments of error:

11

> THE TRIAL COURT ABUSED IT'S DISCRETION AFTER FAILING TO GRANT LEAVE ON A NEW TRIAL MOTION FOR LEAVE PURSUANT TO CRIM.R. 33(B).
>
> THE TRIAL COURT ABUSED IT'S DISCRETION AFTER FAILING TO ACKNOWLEDGE THAT APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WAS TIMELY PURSUANT TO R.C. 2953.23(A)(l)(a).

(*Id.* at p. 1096 (certain marks omitted)). The State of Ohio filed its brief on June 28, 2023. (*Id.* at pp. 1114-28). The appellate court affirmed the lower court's decision on October 18, 2023. (*Id.* at pp. 1140-46). Mills, pro se, appealed to the Ohio Supreme Court on November 14, 2023. (*Id.* at p. 1147). In support of jurisdiction, Mills raised the following proposition of law:

> Proposition of Law No. 1: It is an abuse of discretion, for the lower court, to sustain the trial court's decision, regarding an affidavit that should have warranted an - evidence hearing said affidavit brings to light new facts - exonerating facts - that weren't part of the record due to the appropriate application of the hearsay rule, at trial).

(*Id.* at p. 1150 (certain marks omitted)). The Ohio Supreme Court declined jurisdiction on January 23, 2024. (*Id.* at p. 1180).

## IV.     Federal Habeas Corpus Petition

Mills brings ten grounds for relief in his Petition.[3] (ECF Doc. 1).

**GROUND ONE**: Trial counsel's deficient performance – failing to bring the attention of the court (petitioner's due process rights procedural & substantive and right to equal protection of the law) – negatively altered the outcome of petitioner's case (that-which, most likely would've concluded differently had counsel made the court aware of the petitioner's protected liberty interests that were breach)

**Supporting facts**: The corpus delicti was discovered July 29, 2010, the day the crime occurred; this case was arbitrarily brought back to Akron polices' attention on 4/3/16 (after a traffic stop evolved into a weapons charge (Summit Co./ CR-2016-04-1091-A)) when a known standard, in the form of a buccal swab, was collected from petitioner; However, prosecution did not commence until 8-15-16, in the Akron municipal court (case no. 16CRA08030) however, according to state

---

[3] Mills' Petition contains footnotes throughout that direct this Court's attention to the exhibits attached to his Petition. The footnotes will not be reiterated in this list of grounds for relief, but the exhibits have been reviewed and considered in making this Report and Recommendation.

law (ORC 2907.01: B1a; B2; and B4a) there were 5 different occasions when petitioner came into contact with Ohio employees, prior to 4/3/16, and those encounters should have compelled said employees to collect and submit DNA to bci&I (just as Akron Police had 4/3/16 and 4/6/16) according to division C of section 2901.07 of the ORC.

**GROUND TWO**: Petitioner was denied effective assistance of trial counsel, in violation of the United States Constitution (6th amendments), when counsel failed to subpoena a psychologist, as an expert witness, after speaking with Elohim O. El-Jones prior to his testimony at trial Tr. 417-481. Consequently, counsel's deficient performance altered the outcome of petitioner's trial.

**Supporting facts**: Early December 2017, more than 7 years after the corpus delicti, Elohim O. El-Jones, the admitted assailant, took the stand at petitioner's jury trial and explained in detail (how and when he committed the burglary). When explaining, to the court, his interaction with the victim (El-Jones's recollection as in conflict with that of the victim); that which could've simply been remedied/explained with the assistance of a psychologist. Tr. At 155-157 and blocks 442-446

**GROUND THREE**: Petitioner was deprived effective assistance of counsel (aff-ordered via the 6th amendment of the U.S. Constitution) when counsel failed to gather information of Elohim O. El-Jones (proving he fit the description of the assailant described by the victim Tr. At 158, and sole witness Tr. At 200). Consequently, counsel's deficient performance altered the outcome of petitioner's trial.

**Supporting facts**: At trial, when the lead detective was asked what is petitioner's height, his response was, "I believe about five foot seven inches." El-Jones is the exact same height, has brown eyes dark, dark brown skin and weighs 200-210 pounds. However during closing arguments the state used petitioner's profile as support to prove guilt beyond a reasonable doubt, by the state.

**GROUND FOUR**: Pe[titioner] was denied effective assistance of counsel – sixth amendment – when retained trial counsel failed to bring to the attention of the cou[rt], via pre-trial motion, that prosecution didn't commence on the charge of weapon's under disability (Ohio Revised Code 2923.13) until more than 6 years after the corpus delecti [sic] pursuant to Ohio Revised Code 2901.13 (A)(1)(a). Counsel's failure more-likely-than-not created prejudice at trial, and the coupled unjust delay (in commencing prosecution) would be rendered a dism[issal].

**Supporting facts**: The victim came home unexpectedly, during the early afternoon of 7/29/10, and a masked man was at the top of the stairwell (pointing a gun down at him). The victim and assailant fled; Akron police was called shortly after the burglary/robbery occurring, and the items used were discovered shortly after Akron police's arrival.

13

Less than a week later, AAPD sent the gun, mask, and pry bar to BCI. Over 7 months later BCI responded about a CODIS hit (potential investigative lead); March 30, 2011, BCI informed APD that the ski mask and handgun contained DNA profiles of multiple people, and Mr. Mills was a major contributor. BCI, made APD aware, that a known standard from Petitioner was needed. A standard was never collected, however.

April 3rd, 2016, Mr. Mills was seized for an (alleged) improper left turn by Akron Police, Tr. at 241 & 242. As a result of the search and seizure, authorities discovered a weapon in the center counsel [sic], of the vehicle Mr. Mills was driving. Mr. Mills was arrested (case no. CR-2016-04-1091-A), and booked on weapon's charges. Later the same day, arresting officers returned to the Summit County Jail **to obtain a known standard in the form of a buccal swab**, as evidence, to test against the weapon that was discovered earlier that day.

One or two weeks before Mr. Mills made bond, he was taken to the Akron Police Department, and questioned by Detective David Whiddon. Detective Whiddon told Mr. Mills that he had ***new evidence*** that connected Mr. Mills to a burglary from the summer of 2010. Mr. Mills told detective Whiddon he knew nothing about it, and talk to his attorney. Detective Whiddon told Mr. Mills he would be charged, and the following morning, August 15, 2016, in the Akron Municipal Court, Mr. Mills was charged with aggravated burglary and aggravated robbery. On August 26, 2016, Mr. Mills was indicted – 3 counts and 2 weapon's specs. – by a Summit County Grand Jury.

**GROUND FIVE**: Trial counsel was ineffective, sixth amendment, in failing to object at the sentencing hearing by not requiring the trial court to properly give the appellant all the required notifications concerning post-release control. Counsel's deficiency altered the outcome of the sentencing hearing.

**Supporting facts**: Mr. Mills was sentenced on January 16, 2018. During the sentencing hearing, the trial court sentenced Mr. Mills to five years of mandatory post-release control. However, at no time during the sentencing hearing did the trial court ever inform Mr. Mills that if he violated post-release control, the parole may impose a prison term up to one-half of the stated prison term originally imposed upon the offender.

**GROUND SIX**: Trial counsel was ineffective, sixth amendment, during pre-trial phase, when defendant/ petitioner made retained counsel aware of witness and actual assailant's existence/role in the criminal matter, and made a conscious decision to only seek-out and question assailant (without seeking and deposing witness). The witness' testimony most likely would have altered the outcome of the criminal trial had retained trial counsel sought-out said witness.

**Supporting facts**: At a pre- trial hearing – 10/17/17 – petitioner informed trial counsel of the actual assailant and the person's home the gun and mask were taken (Elohim O. El-Jones and Demrus Johnson, respectively).

When counsel informed petitioner that El-Jones had been located, he asked, "where's Johnson"? Counsel told petitioner that Johnson wasn't needed, because El-Jones admitted to committing said crime, and we're not doing a pre-trial motion to dismiss because when the judge denies that motion we don't want to give the prosecution an advantage at trial (which made sense to petitioner).
During El-Jones' testimony at trial, he began to explain his role related to the crime in question, blocks 417-481, in addition, when el-jones began to explain how he was aware that the gun and masked belonged to someone else the state appropriately objected block 432-434 . . . .

**GROUND SEVEN**: petitioner's 6th amendment rights to an impartial jury were breached when the trial jurors unanimously found petitioner guilty on all counts without concluding that the state proved petitioner's guilt *beyond a reasonable doubt*.

**Supporting facts**: Admitted assailant – in detail, a gentleman admitted to committing the crime in question with the particulars that were discovered near the crime scene. The bci report reported that an additional set of DNA was discovered on the same spots that the petitioner's DNA was found.

The Safe – Appellate counsel failed to point out the victim's inconsistent testimony, regarding his recollection of securing his safe (when he left for class) on the day his home was burglarized.

However, 7.5 years later Dennis Keith assured the court, "my safe is always locked" Tr. 185, line 19. Lieutenant Whiddon testified that the victim couldn't recall, on July 29, 2010, whether he left his safe unlocked or locked prior to leaving that day. Testimony from lieutenant Whiddon, regarding Sergeant McLeod's report, is that there weren't any signs of forcible entry although the victim tried to persuade all who were present, *at trial*, that the safe was pried open, even though the reporting officer, who documented the scene reported no signs of forced entry into the safe.

The admitted assailant testified that the safe was already open when he burglarized the house. He admitted he was looking for the safe in the bedroom closet. Tr. 43

Forensic experts – experts admitted that an additional set of DNA was found on the handle of the gun and inside the ski mask (the exact same locations DNA profiles consistent with the petitioner's own were found). However, this additional set was not tested, because it wasn't a high enough concentration of DNA to even distinguish the sex . . . . Yet, Ms. Viola admitted that its highly probable that at some point in time another individual handled these items Tr. at 376 and 377.

State's Closing argument – At tr. 153, the victim testified to opening up one side of his garage to enter his home (moments before the interaction with the assailant occurred). At Tr. 443, Mr. El-Jones testified to hearing something coming from the garage area, "I guess it was the garage door opening, or car pulling up . . ." At closing arguments Tr. at 541, the prosecutor said, "remember when Mr. Keith said the garage door was open and he walked through it, because it was already opened? Remember that? So why did he (referring to El-Jones) hear the garage door open? Why did Mr. el-Jones say that that's what startled him and caused him to start going down the stairs? Because it's not what happened. He's making that up."

Even though the jury was given instructions regarding the closing arguments, we're humans, so who's to say that the jury would have disregarded that misleading and incorrect statement even if an objection was made and the court gave instructions to disregard?

No objection was made, the jury deliberated with false facts that the prosecutor *intentionally* planted in their minds . . . and unanimously found petitioner guilty.

**GROUND EIGHT**: Petitioner's 5th amendment rights (pre-indictment delay) were not protected when elements essential to gaining a conviction created prejudice (due to the states unjust delay in commencing prosecution).

**Supporting facts**: Admitted assailant: El-Jones' recollection (of his interaction with the victim) at the stairwell was not in synch with-that of the victim (nor the initial police reports)

Because more than 6 years passed before petitioner was initially charged in the matter, an alibi can't be established/secured (petitioner does not remember where he was mid-day 7/29/10)

A codis hit was received by the lead detective on the case, from bci&I, 8 months after the corpus delicti, and no diligence was used to collect a known standard from petitioner as confirmation until 2016 (during an unrelated traffic stop)

**GROUND NINE**: Prosecutorial misconduct happened (5th and 6th amendment rights) during the closing arguments of petitioner's trial.

**Supporting facts**: At tr. 153, the victim testified to opening up one side of his garage to enter his home (moments before the interaction with the assailant occurred). At Tr. 443, Mr. El-Jones testified to hearing something coming from the garage area, "I guess it was the garage door opening, or a car pulling up . . ." At closing arguments Tr. At 541, the prosecutor said, "remember when Mr. Keith said the garage door was open and he walked through it (because it was already opened)? Remember that? So why did he (referring to El-Jones) hear the garage door open? Why did Mr. El-Jones say that that's what startled him and caused him

to start going down the stairs? Because it's not what happened. He's making that up."

Even though the jury was given instructions regarding the closing arguments, we're humans, so who's to say that the jury would have disregarded that misleading and incorrect statement even if an objection was made and the court have instructions to disregard?

Since no objection was made, the jury deliberated with false facts that the prosecutor intentionally planted in their minds . . . this is not to be taken lightly.

**GROUND TEN**: Petitioner was deprived effective assistance (6th amendment right) when counsel failed to file pre-trial motion to dismiss based on the procedural due process clause (5th and 14th amendment rights), substantive due process clause (5th and 14th amendment rights), and the equal protection clause (14th amendment rights) all being abridged, causing a deprivation of Mr. Mills' fundamental rights guaranteed by the United States Constitution; the outcome of this case would've been different if not for counsel's poor decision making.

**Supporting facts**: Petitioner's claim derives from a letter that APD received from BCI&I in 2011 (less than a year after the corpus delecti) of a CODIS hit (investigative lead) that should have compelled APD to seek out Mr. Mills and collect a known standard.

Had DNA specimen been obtained in 2011 when authorities were notified by BCI&I, just as it had been obtained on April 3rd, 2016 – after a traffic stop that evolved into an investigatory stop – and forwarded to BCI&I on April 6th, 2016 (also included in exhibit J), this matter would've been resolved.

(certain marks omitted) (*Id.* at pp. 5-31).

## V.  Federal Habeas Corpus Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Mills' petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims

17

have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA

"dictates a highly deferential standard for evaluating state-court rulings which demands that

state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005)

(internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging

that a person is in state custody 'in violation of the Constitution or laws or treaties of the United

States'" and in most instances, federal courts may not grant habeas relief "unless . . . the

applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a),

(b), (c). Further, if an application for writ of habeas corpus involves a claim that was

"adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100

(2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the

petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the

holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S.

362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state

court arrives at a conclusion opposite that reached by the Court on a question of law or if the

state court decides a case differently than the Court despite both cases having materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431

F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022)

(internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI.  Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchell*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A.  Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have

been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

    (1) reliance upon federal cases employing constitutional analysis;

    (2) reliance upon state cases employing federal constitutional analysis;

    (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

    (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B.    Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337

22

(6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VII. Discussion

Mills raises ten grounds for relief in his Petition before this Court. (ECF Doc. 1, pp. 8-32). Grounds One, Two, Three, Four, Five, Six, and Ten allege ineffective assistance of trial counsel. (*Id.* at pp. 8-22, 30-31). His seventh ground asserts that he was denied his Sixth Amendment right to an impartial jury. (*Id.* at p. 22-26). In his Eighth and Ninth grounds for relief, Mills asserts his constitutional rights were violated by the state prosecutor due to pre-indictment delay and prosecutorial misconduct. (*Id.* at p. 26-30). Mills' grounds for relief will, at times, be analyzed jointly and out of order for ease of discussion.

### A. Ineffective Assistance of Trial Counsel

In seven of Mills' ten grounds for relief, he asserts that he received ineffective assistance of trial counsel for various reasons. Mills raised the issue of ineffective assistance of trial counsel in his direct appeal, and ineffective assistance of appellate counsel in his reopened appeal. *Mills I*, No. 28954, 2019 WL 1062455 (Ohio Ct. App. March 6, 2019); *Mills II*, No. 28954, 2021 WL 118564 (Ohio Ct. App. Jan 13, 2021). However, upon review, it appears that none of the

23

ineffective assistance of trial counsel issues raised in his grounds for relief were fairly presented to the state court for adjudication, therefore Grounds One, Two, Three, Four, Five, Six, and Ten are procedurally defaulted.

Ohio's Ninth District Court of Appeals addressed Mills' ineffective assistance of counsel claim in his direct appeal as follows:

{¶17} In his second assignment of error, Mr. Mills argues that he received ineffective assistance of counsel. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, the defendant must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. Notably, if a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong. *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶18} Mr. Mills argues that he received ineffective assistance of counsel for several reasons, including that his trial counsel failed to: raise any substantive issues at the pretrial level that could have entitled him to relief; raise any issues with respect to the delayed prosecution and/or pretrial delay; raise any suppressible issues that may have existed because of the delayed prosecution and/or pre-indictment delay; request a jury view; and mention during opening statements that the jury would hear testimony from a defense witness who would admit to committing the crime. He also argues that his counsel should have hired a DNA expert, and should have cross-examined the State's DNA expert regarding the lack of forensic testing on the gun cartridges. He further argues that his counsel's cross-examination of the State's firearms expert was uninformed. He concludes that, when considered in their totality, these errors deprived him of a fair trial.

{¶19} While Mr. Mills states that his counsel's alleged errors deprived him of a fair trial, he fails to explain how, but for the alleged errors, the result of the trial would have been different. For example, he asserts that his trial counsel failed to raise any issue regarding the delayed prosecution and/or pre-indictment delay, but has not articulated how this alleged error prejudiced him. *See State v. Clark*, 12th Dist. Warren No. CA2007-03-037, 2008-Ohio-5208, ¶ 47 (holding that the defendant failed to establish ineffective assistance because he did not establish a reasonable probability that the result of the proceeding would have been different had his counsel filed a motion to dismiss based upon a pre-indictment delay). The same is

true for his assertions that his counsel should have elicited certain testimony on cross-examination, hired expert witnesses, requested a jury view, and mentioned a defense witness during opening statements. A claim for ineffective assistance requires a showing of prejudice, which Mr. Mills has not done. At most, Mr. Mills has raised issues of debatable trial strategies, which do not by themselves constitute ineffective assistance. *State v. Arias*, 9th Dist. Lorain No. 04CA008428, 2004-Ohio-4443, ¶ 35 ("[A] debatable trial strategy does not by itself constitute ineffective assistance of counsel."); *State v. Spaulding*, 9th Dist. Summit No. 28526, 2018-Ohio-3663, ¶ 62, quoting *State v. Rafferty*, 9th Dist. Summit No. 23217, 2007-Ohio-3997, ¶ 15 ("The extent and scope of cross-examination clearly fall within the ambit of trial strategy * * *."); *State v. Coombs*, 9th Dist. Lorain No. 03CA008262, 2004-Ohio-441, ¶ 26 ("[T]he decision whether to call an expert witness is simply a matter of trial strategy.); *State v. Gaston*, 6th Dist. Lucas No. L-06-1183, 2008-Ohio-1856, ¶ 34 (failing to request a jury view does not constitute ineffective assistance and is arguably unnecessary when the jury is shown pictures of the crime scene); *State v. Addison*, 10th Dist. Franklin No. 03AP-1102, 2004-Ohio-5154, ¶ 13 ("[The decision to give a short opening statement is a tactical decision."). Because Mr. Mills has failed to demonstrate that he suffered prejudice as a result of his counsel's actions, he has not established a claim for ineffective assistance of counsel. Accordingly, his second assignment of error is overruled.

(ECF Doc. 8-1, pp. 78-86; *Mills I*, No. 28954, 2019 WL 1062455).

In Mills' reopened appeal pursuant to Ohio Appellate Rule 26(B), the state appellate court

ruled as follows regarding ineffective assistance of appellate counsel:

{¶7} In his first assignment of error, Mr. Mills argues that his trial counsel rendered ineffective assistance by not moving to dismiss the weapons-while-under-disability count based upon the expiration of the statute of limitations, and that his prior appellate counsel rendered ineffective assistance by failing to assign his trial counsel's failure in this regard as an error on appeal. This Court disagrees.

{¶8} Mr. Mills was charged and convicted of having weapons while under disability pursuant to Revised Code Section 2923.13(A)(3). That offense is a third-degree felony and must be prosecuted within six years after the offense is committed. R.C. 2923.13(B); R.C. 2901.13(A)(1)(a). Section 2901.13(G), however, provides that "[t]he period of limitation shall not run during any time when the corpus delicti remains undiscovered." "The corpus delicti of a crime is the body or substance of the crime and usually has two elements: (1) the act itself and (2) the criminal agency of the act." *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, paragraph one of the syllabus. "For example, when the offense is homicide, the corpus delicti 'involves two elements, *i.e.,* (1) the fact of death and (2) the existence of the criminal agency of another as the cause of death.'" *Id.* at ¶ 23, quoting *State v. Van Hook*, 39 Ohio St.3d 256, 261 (1988). "The purpose of the corpus delicti is simply to establish that the crime occurred." *State v. Smith*, 9th Dist. Wayne Nos.

01CA0039, 01CA0055, 2002-Ohio-4402, ¶ 10, citing *Van Hook* at 262. It is discovered when a competent person other than the wrongdoer, or someone equally at fault, has knowledge of both the act and its criminal nature. *State v. McLaughlin*, 109 Ohio App.3d 868, 871 (9th Dist.1996), citing *State v. Hensley*, 59 Ohio St.3d 136, 138 (1991).

{¶9} Mr. Mills asserts that the statute of limitations for the weapons-while-under-disability count expired on July 10, 2016, six years after the offense was committed, and that none of the tolling provisions under Section 2901.13(H) apply. In response, the State argues that, because the corpus delicti of having weapons while under disability was not discovered until DNA tests on items discovered at the scene matched to Mr. Mills through the CODIS hit in 2011, the statute of limitations did not expire until 2017.

{¶10} As previously noted, the police became aware of Mr. Mills's identity through a CODIS hit in 2011, which indicated a possible match of his DNA to the DNA obtained from items discovered near the victim's home. While the State knew that the intruder who broke into the victim's home had possessed a firearm, without knowing the identity of the intruder, the State had no way of knowing the criminal nature of that act (i.e., that the intruder was under a disability). Stated differently, under these facts, only when the police learned of the intruder's identity could the State have become aware of the criminal nature of Mr. Mills's act of possessing a firearm. The corpus delicti of the weapons-while-under-disability crime, therefore, was not discovered until 2011, giving the State until 2017 to prosecute Mr. Mills for that crime. *See* R.C. 2901.13(A)(1)(a); R.C. 2901.13(G). Because the State prosecuted Mr. Mills in 2016, we reject his argument that the statute of limitations had expired, as well as his ineffective-assistance arguments that stem therefrom. Mr. Mills's first assignment of error is overruled.

. . .

{¶11} In his second assignment of error, Mr. Mills argues that the trial court failed to properly advise him regarding the terms of his post-release control, that his trial counsel rendered ineffective assistance by not raising this issue at the sentencing hearing, and that his prior appellate counsel rendered ineffective assistance by failing to assign his trial counsel's failure in this regard as an error on appeal. More specifically, Mr. Mills asserts that the trial court failed to advise him that if he violated his post-release control, the parole board may impose a prison term of up to one-half of the prison term originally imposed on him. He, therefore, concludes that his prior appellate counsel rendered ineffective assistance, and that he is entitled to a new sentencing hearing so that the trial court can properly advise him of the terms of his post-release control.

{¶12} The State concedes this error on appeal, and this Court's review of the record likewise indicates that the trial court did not properly advise Mr. Mills regarding his post-release control. As this Court has stated:

"It is settled that 'a trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing' and that 'any sentence imposed without such notification is contrary to law.'" *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 8, quoting *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 23. As part of that duty, "at the sentencing hearing, the court must notify the offender that if he or she 'violates that supervision * * *, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender.'" *Grimes* at ¶ 23, quoting R.C. 2929.19(B)(2)(e); *see also State v. West*, 9th Dist. Summit No. 28051, 2016-Ohio-5694, ¶ 6.
*State v. Hennacy*, 9th Dist. Summit Nos. 29115, 29116, 2019-Ohio-1332, ¶ 25.

{¶13} "When a case is within a court's subject-matter jurisdiction and the accused is properly before the court, any error in the exercise of that jurisdiction in imposing postrelease control renders the court's judgment voidable, permitting the sentence to be set aside if the error has been successfully challenged on direct appeal." *State v. Harper*, Slip Opinion No. 2020-Ohio-2913, ¶ 4. Because the trial court did not properly impose post-release control, that part of Mr. Mills's sentence is set aside, and Mr. Mills is entitled to a new sentencing hearing limited to the proper imposition of post-release control. Mr. Mills's second assignment of error sustained.

(ECF Doc. 8-1, pp. 885-91; *Mills II*, No. 28954, 2021 WL 118564).

### 1.    Grounds One and Ten were not exhausted in the state courts and are now procedurally defaulted.

Mills' first and tenth grounds relate to his assertion that his trial counsel was constitutionally ineffective for failing to raise an issue with the trial court regarding law enforcement's failure to retrieve a "known standard, in the form of a buccal swab" in 2011 rather than 2016. (ECF Doc. 1, pp. 5, 17, 30-31). He argues that had his trial counsel raised this issue, the outcome of trial would have been different. (ECF Doc. 11, pp. 8, 21).

Exhaustion of state court remedies is a prerequisite for federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). Thus, for a state prisoner's claim to be available for federal habeas corpus review, the petitioner must first give state courts a "*fair* opportunity" to act on those claims. *O'Sullivan*, 526 U.S. at 844, citing 28 U.S.C. § 2254(c) (emphasis in original). "State courts, like federal courts, are obliged to enforce federal law[,]" therefore, "state courts should

have the first opportunity to review [a petitioner's] claim and provide any necessary relief." *Id.*; *see also Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) ("Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights . . . .") (internal quotations and marks omitted). To satisfy the fair presentation requirement, a petitioner must do more than present the "'substance'" of their claim to the state court; the petitioner "is required to present the state courts with the same claim, or a claim 'substantially equivalent' to the claim" now presented in federal court. *Jalowiec*, 657 F.3d at 304, quoting *Picard v. Connor*, 404 U.S. 270, 275-78 (1971). The petitioner must also present the state court with the federal constitutional basis for their claims, which may be done by (1) relying upon federal cases employing constitutional analysis; (2) relying upon state cases employing federal constitutional analysis; (3) presenting the claim in sufficiently particular terms to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans*, 228 F.3d at 681; *see also Williams*, 460 F.3d at 807.

Failure to properly exhaust in state court can lead to procedural default of a federal habeas corpus petition. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In federal habeas, if a state court remedy is no longer available, regardless of the reason, that remedy is exhausted; but technical exhaustion via unavailability of a state court remedy does not automatically entitle the petitioner to litigate the merits of their claims in federal court. *Id.*

Mills did not raise the buccal swab issue in either his direct appeal or his reopened appeal. Mills did raise an argument regarding delayed prosecution, arguing as follows: "Most startling is that the issue of delayed prosecution and/or pretrial delay was not raised by trial counsel until his cross examination of the State's final witness at trial. The delayed prosecution and/or preindictment delay had to have been challenged at the pretrial level, if only to have

28

preserved the issue for appeal. Trial counsel's performance does not meet an objective standard of reasonableness in this regard." (ECF Doc. 8-1, p. 35). However, the argument does not go any further than that. Mills did not raise the issue regarding his trial counsel's failure to challenge law enforcement's "failure to collect and submit DNA to bci&I" prior to 2016. (ECF Doc. 1, p. 17).

When a federal habeas petitioner raises an ineffective assistance of counsel ground for relief but does so under a different theory than one raised in their state court proceedings, they have procedurally defaulted that newly raised issue. *See Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002). Accordingly, because Mills did not specifically raise this issue with the state appellate court, he did not exhaust his state court remedies by fairly presenting this issue and state court remedies are no longer available to him.

As noted above, a federal habeas court may, in certain circumstances, reach the merits of a procedurally defaulted ground through court-created safety valves. See *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To reach the merits of a procedurally defaulted claim, a petitioner must demonstrate cause and prejudice excusing the default or that there is new evidence that proves a petitioner's actual innocence. *Id.*

In his petition, Mills acknowledges that he did not raise these ineffective assistance of trial counsel issues. (ECF Doc. 1, pp. 6, 31). In Ground One he argues that he did not do so because "[e]vidence outside the record prevented" him. (ECF Doc. 1, p. 6). However, by the very nature of the allegations, Mills was aware of this purported issue at least as early as 2016, and the information was therefore available to him at the time of his direct appeal. Therefore, Mills has not demonstrated an external factor that kept him from fairly presenting his ineffective assistance of counsel claim to excuse his default. Further, Mills does not allege any new evidence that proves his factual innocence.

Based on the foregoing, I find that Mills has not excused his procedural default and I recommend that Grounds One and Ten be dismissed.

> ### 2. Mills failed to exhaust his state court remedies and has procedurally defaulted Grounds Two and Three.

Mills acknowledges that his second and third grounds for relief are similar in that they assert that trial counsel was ineffective for failing to utilize certain evidence including calling an expert witness to testify about memory and utilizing physical descriptions of El-Jones during his testimony. (ECF Doc. 11, pp. 10-11). Under these grounds for relief, Mills acknowledges that these issues were not raised on direct appeal. (*Id.* at pp. 10-11). In doing so, Mills asserts had he "addressed the issue as an assignment of error on direct appeal (via counsel) the court's wouldn't have been obligated to acknowledge the argument, because the evidence presented wouldn't have been part of the record . . . ." (*Id.* at p. 10). Instead, Mills suggests that he timely brought the issues to the state court's attention via a petition for post-conviction relief. (*Id.* at p. 11). I find that Mills procedurally defaulted these issues both by failing to fairly present them to the state court and under *Maupin*.

As previously noted, to fairly present a constitutional issue to state courts for adjudication, federal habeas petitioners must raise the issue at every stage of the regular appellate process. *O'Sullivan*, 526 U.S. at 848. Mills acknowledges that these issues were not raised on direct appeal, or in his re-opened appeal. (*See* ECF Doc. 11, p. 10 n.4). The information he relies on in Grounds Two and Three – failing to call a memory expert and elicit testimony of defense witnesses – are evidentiary tactics he wished his trial counsel had employed, things that were known to him at the time of his direct appeal, and he therefore could have raised them in appellate review. Failing to do so results in procedurally defaulting the issues. Mills again argues that facts outside of the record prevented him from raising these issues (ECF Doc. 1, pp. 7, 9)

and does not direct the Court's attention to new evidence establishing actual innocence. Just as I did in the previous two grounds for relief, I find that Mills has not excused his default on Grounds Two and Three.

Notwithstanding, Mills claims that he raised these issues with the state court in his petitions for postconviction relief. (ECF Doc. 1, p. 10, 11; *See* ECF Doc 8-1, pp. 161-66, 1042-43). Even if this were enough to fairly present the issue to the state courts, I would still recommend that these grounds for relief be dismissed as procedurally defaulted under *Maupin*.

The state trial court denied Mills' first petition for post-conviction relief pursuant to the doctrine of res judicata. (*Id.* at. p. 693). Mills appealed and Ohio's Ninth District Court of Appeals affirmed the trial court's decision as follows:

> {¶11} Mr. Mills suggests that his second, third, and fourth claims for relief should not have been dismissed as res judicata because he appended exhibits to his petition that were not part of the record on appeal. "'For a defendant to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record, and it must not be evidence that existed or was available for use at the time of trial.'" *State v. Jennings*, 10th Dist. Franklin No. 17AP-248, 2018-Ohio-3871, ¶ 17, quoting *State v. Montgomery*, 10th Dist. Franklin No. 13AP-1091, 2014-Ohio-5756, ¶ 19. *Accord State v. Dennison*, 4th Dist. Lawrence No. 18CA6, 2018-Ohio-4502, ¶ 18; *State v. Long*, 5th Dist. Richland No. 17CA15, 2017-Ohio-2848, ¶ 17.

> {¶12} In support of his second, third, and fourth claims for relief, Mr. Mills provided the trial court with numerous documents that appeared in the record on appeal or were otherwise available at the time of trial. Specifically, Mr. Mills draws this Court's attention to a Wikipedia page, an entry in the World Book Encyclopedia, and a document that purports to describe the physical characteristics of Mr. El-Jones. Even assuming that reference materials such as these are "evidence" for purposes of postconviction relief, this Court notes that all of the information contained in these documents existed and was available for use at the time of trial, so Mr. Mills cannot defeat application of res judicata with resort to these materials. *See In re D.J.* at ¶ 14.

> {¶13} The trial court did not err by dismissing Mr. Mills' second, third, and fourth claims for relief without a hearing. His first and second assignments of error are, therefore, overruled.

(ECF Doc. 8-1, pp. 753-60, *State v. Mills*, No. 29856, 2021 WL 2354818, at *3 (Ohio Ct. App. June 9, 2021) ("*Mills III*")).

Under the first prong of *Maupin*, this Court must determine whether Mills failed to comply with a procedural rule. Ohio's res judicata rule provides that:

> Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 *et seq.,* Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.

*Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001) quoting *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967) (syllabus). Thus, a criminal defendant in Ohio may not seek "postconviction relief on 'any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at trial,* which resulted in that judgment or conviction, *or on an appeal* from that judgment.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012) quoting *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982) (emphasis in original).

Here, the state court of appeals found Mills' ineffective assistance of counsel claim barred by res judicata because the "all of the information contained in [the relied upon] documents existed and was available for use at the time of trial." *Mills III*, No. 29856, 2021 WL 2354818, at *3. Accordingly, Mills failed to comply with a state procedural rule and the state court enforced the rule when it denied his petition under the doctrine of res judicata. The third *Maupin* prong is also met, since the Sixth Circuit has consistently held that "Ohio's doctrine of *res judicata* as a procedural bar is regularly applied by the Ohio courts." *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

Finally, I find that Mills has not demonstrated cause or prejudice to excuse the default. In his petition, Mills argues he was prevented from raising these issues on direct appeal because

"[e]vidence/facts that weren't part of the record prevented" him. (ECF Doc. 1, pp. 7, 9). However, as stated in both the fair presentation and *Maupin* sections addressing Mills' procedural default, the information he relies on was available to him, and he has not argued cause or prejudice regarding the state court's application of res judicata. Accordingly, under *Maupin*, I find Mills procedurally defaulted Grounds Two and Three in his Petition. I therefore recommend the district court dismiss these grounds.

### 3.  Ground Six similarly suffers from being procedurally defaulted.

In his sixth ground, Mills argues that his trial counsel was ineffective for failing to call an additional defense witness at trial. (*Id.* at pp. 20-21). Under this ground, Mills also acknowledges that he did not raise this issue on direct appeal, and instead waited to raise this one in a second petition for post-conviction relief filed in 2022. (ECF Doc. 1, p. 21; ECF Doc. 8-1, p. 1042-43). I find that this ground suffers the same fate as Grounds Two and Three in that Mills has procedurally defaulted this issue as failing to fairly present it to the state courts.

As Mills acknowledges, he did not raise his trial counsel's alleged ineffectiveness for failing to call an additional defense witness in his direct appeal. This renders the issue procedurally defaulted because by his own admission, this information was known to at the time of his direct appeal. (*See* ECF Doc. 1, p. 20 "At a pre-trial hearing – 10/17/17 – petitioner informed trial counsel of the actual assailant and the person's home the gun and mask were taken [from] (Elohim O El-Jones and Demrus Johnson, respectively),"). Thus, by failing to raise it as error, Mills failed to fairly present the issue during the ordinary appellate process.

When Mills eventually raised the issue in his second petition for post-conviction relief, the state court dismissed the petition for lack of jurisdiction. (ECF Doc. 8-1, p. 1083-90). While Mills did file an appeal from the trial court's judgment, he did not do so on the same grounds

raised with this court – constitutional ineffective assistance of counsel – rather, he raised the issue as the trial court abusing its discretion when it ruled on his petition. (*Id.* at p. 1096). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec*, 657 F.3d at 304. Failing to raise the issue on the same constitutional or federal law grounds in the state court's normal appellate process renders the issue procedurally defaulted when those remedies are no longer available to the petitioner. *Id.*

Mills argues this issue was not addressed in his direct appeal because "this issue couldn't have been addressed on direct [without] testimony" from the purported witness. (ECF Doc. 11, p. 14). Mills' argument addresses the underlying claim regarding the testimony of a witness he wished had been presented at trial. However, the lack of that witness' testimony is not an external factor that prevented him from raising his trial counsel's alleged ineffectiveness during the state's normal appellate process. Mills does not direct the Court's attention to any new evidence that establishes his actual innocence. Therefore, Mills has not excused his default.

Consequently, I recommend that the District Court dismiss Mills' sixth ground for relief as procedurally defaulted.

### 4. Mills' fourth ground for relief is procedurally defaulted.

Mills' fourth ground for relief raises issue with his trial counsel's failure to file a pre-trial motion to dismiss the weapons while under disability charge, arguing that if he had, that charge would have been dismissed as time barred. (ECF Doc. 1, pp. 10, 17). I find that this issue is procedurally defaulted because it was not fairly presented to the state court for review.

Mills did not raise this issue on direct appeal. (ECF Doc. 8-1, pp. 23-38). Furthermore, while similar, this issue differs from the one raised in his reopened appeal. In his reopened appeal, Mills argued that his appellate counsel was ineffective for failing to assign as error that his trial counsel was ineffective for failing to file a pre-trial motion to dismiss the weapons while under disability charge. (*Id.* at p. 843). The distinction, for purposes of procedural default, is that in his reopened appeal, Mills presented for state court review his appellate counsel's ineffectiveness; whereas, for habeas review, Mills asserts that his trial counsel was ineffective. Thus, despite bringing similar claims to the state court, he has failed to fairly present his claims to the state court on the same basis as he now asks of this Court. As a result, he has not given the state courts an opportunity to correct any alleged constitutional error. Mills no longer has state court remedies available for relief. Mills does not argue cause or prejudice to excuse this default, but rather argues that he did properly exhaust his state court remedies. (ECF Doc. 11, p. 12). Mills also does not argue actual innocence based on new evidence. Because I disagree that this ground was properly exhausted and find that Mills did not fairly present the issue, I recommend that Ground Four be dismissed as procedurally defaulted.

Notwithstanding my finding of procedural default, if this ground were reviewed on the merits based upon the state appellate court's analysis in Mills' reopened appeal, this ground for relief would be meritless. Mills has not demonstrated that the Ohio appellate court unreasonably applied federal law nor did its decision result from an unreasonable determination of the facts when it denied his ineffective assistance of appellate counsel claim on the basis that he was not prejudiced by trial counsel's failure to file a pre-trial motion to dismiss.

In addressing this issue, the state appellate court found as follows:

{¶7} In his first assignment of error, Mr. Mills argues that his trial counsel rendered ineffective assistance by not moving to dismiss the weapons-while-under-disability

35

count based upon the expiration of the statute of limitations, and that his prior appellate counsel rendered ineffective assistance by failing to assign his trial counsel's failure in this regard as an error on appeal. This Court disagrees.

{¶8} Mr. Mills was charged and convicted of having weapons while under disability pursuant to Revised Code Section 2923.13(A)(3). That offense is a third-degree felony and must be prosecuted within six years after the offense is committed. R.C. 2923.13(B); R.C. 2901.13(A)(1)(a). Section 2901.13(G), however, provides that "[t]he period of limitation shall not run during any time when the corpus delicti remains undiscovered." "The corpus delicti of a crime is the body or substance of the crime and usually has two elements: (1) the act itself and (2) the criminal agency of the act." *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, paragraph one of the syllabus. "For example, when the offense is homicide, the corpus delicti 'involves two elements, *i.e.,* (1) the fact of death and (2) the existence of the criminal agency of another as the cause of death.'" *Id.* at ¶ 23, quoting *State v. Van Hook*, 39 Ohio St.3d 256, 261 (1988). "The purpose of the corpus delicti is simply to establish that the crime occurred." *State v. Smith*, 9th Dist. Wayne Nos. 01CA0039, 01CA0055, 2002-Ohio-4402, ¶ 10, citing *Van Hook* at 262. It is discovered when a competent person other than the wrongdoer, or someone equally at fault, has knowledge of both the act and its criminal nature. *State v. McLaughlin*, 109 Ohio App.3d 868, 871 (9th Dist.1996), citing *State v. Hensley*, 59 Ohio St.3d 136, 138 (1991).

{¶9} Mr. Mills asserts that the statute of limitations for the weapons-while-under-disability count expired on July 10, 2016, six years after the offense was committed, and that none of the tolling provisions under Section 2901.13(H) apply. In response, the State argues that, because the corpus delicti of having weapons while under disability was not discovered until DNA tests on items discovered at the scene matched to Mr. Mills through the CODIS hit in 2011, the statute of limitations did not expire until 2017.

{¶10} As previously noted, the police became aware of Mr. Mills's identity through a CODIS hit in 2011, which indicated a possible match of his DNA to the DNA obtained from items discovered near the victim's home. While the State knew that the intruder who broke into the victim's home had possessed a firearm, without knowing the identity of the intruder, the State had no way of knowing the criminal nature of that act (i.e., that the intruder was under a disability). Stated differently, under these facts, only when the police learned of the intruder's identity could the State have become aware of the criminal nature of Mr. Mills's act of possessing a firearm. The corpus delicti of the weapons-while-under-disability crime, therefore, was not discovered until 2011, giving the State until 2017 to prosecute Mr. Mills for that crime. *See* R.C. 2901.13(A)(1)(a); R.C. 2901.13(G). Because the State prosecuted Mr. Mills in 2016, we reject his argument that the statute of limitations had expired, as well as his ineffective-assistance arguments that stem therefrom. Mr. Mills's first assignment of error is overruled.

*Mills II*, No. 28954, 2021 WL 118564.

The Sixth Amendment provides in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. The Supreme Court set forth two requirements that must be shown to establish that an attorney was constitutionally ineffective in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689. Thus, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (internal citation omitted).

Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable." *Id.* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When the state appellate court analyzes an ineffective assistance of counsel claim on the merits, a federal habeas court applies AEDPA deference to the state court's adjudication pursuant to § 2254(d). *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011). The U.S. Supreme Court explained the added layer of deference as follows:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 103-05 (2011).

When it analyzed Mills' ineffective assistance of appellate counsel claim, the state appellate court utilized the *Strickland* standard and determined that Mills could not establish the prejudice prong of *Strickland* based on its determination that Ohio's statue of limitations had not expired when he was charged. Applying the double deference required of a federal court sitting in habeas review, I find that the Ohio Ninth District Court of Appeals' denial of his ineffective assistance of counsel claim was not contrary to and did not involve an unreasonable application of federal law nor was it an unreasonable application of the facts.

38

I recommend that the District Court dismiss Ground Four as procedurally defaulted, or in the alternative, deny it as meritless.

### 5.      Ground Five is procedurally defaulted.

In his fifth ground for relief, Mills argues that his trial counsel was ineffective for failing to object during his sentencing hearing when the sentencing court improperly advised him regarding his post-release control. (ECF Doc. 1, p. 18-19). I find that Mills procedurally defaulted this ground for the same reasons he defaulted Ground Four – he did not fairly present this issue to the state courts for adjudication.

Mills did not raise issue with this in his direct appeal, and in his re-opened appeal pursuant to Ohio Appellate Rule 26(B), he argued that his appellate counsel was ineffective. (ECF Doc 8-1, p. 843). In his federal habeas petition, he argues that his trial counsel was ineffective, not his appellate counsel, thus the ground is procedurally defaulted, and Mills does not attempt to excuse the default by arguing cause, prejudice, or actual innocence. (See ECF Doc. 11, p. 13). If the Court were to find that raising the issue of appellate counsel's alleged constitutional ineffectiveness did present the issue to the appellate court, I would still find that Mills failed to fairly present this issue because he did not raise it on appeal to the Ohio Supreme Court. (*Id.* at p. 895). In that regard, Mills failed to exhaust his state court remedies, and those remedies are no longer available to him. Mills does not address cause, prejudice, or actual innocence to excuse his default.

### B.      Ground Eight has been procedurally defaulted.

In his eighth ground for relief, Mills argues that his Fifth Amendment right against pre-indictment delay was violated when he was charged with the burglary "more than 6 years" after the burglary took place. (ECF Doc. 1, p. 26). Mills acknowledges that this issue was not raised as

a pre-trial motion, in his direct appeal, nor in his re-opened appeal. (*Id.* at pp. 26-27). Accordingly, because Mills did not raise this issue through the state court's normal appellate process and he no longer has state court remedies available to him, I find that he has procedurally defaulted this issue.

In his traverse, Mills appears to argue cause for his failure to exhaust state court remedies in that his appointed appellate counsel in his re-opened appeal was ineffective for failing to raise trial counsel's ineffectiveness for not filing a pre-trial motion to dismiss. (ECF Doc 11, p. 17). Mills asserts "[h]ad counsel pointed this [issue] out via pre-trial motion (there's a high probability that [the trial judge] would have dismissed this case.)."

While ineffective assistance of counsel may be argued as cause in federal habeas review for a procedurally defaulted claim, that is only true when the ineffective assistance of counsel issue itself is not procedurally defaulted. See *Edwards v. Carpenter*, 529 U.S. 446, 453 (U.S. 2000). Here, Mills did not raise the issue of his second appellate counsel's ineffectiveness with the state court. When appealing the state appellate court's decision on his reopened appeal, he argues that the state appellate court erred on the merits of the issue raised in his reopened appeal. (*See* ECF Doc. 8-1, pp. 894-904). Furthermore, Mills references a writ of mandamus filed with the Ohio Supreme Court following his reopened appeal in support of this ground for relief. (ECF Doc. 1, p. 27). I note that the writ of mandamus was not included in the state court history provided by respondent. However, assuming arguendo this was the proper mechanism to fairly present this issue, which I do not believe that it was, a review of the writ on the Ohio Supreme Court's online docket reveals that Mills did not raise his second appellate counsel's ineffectiveness in this writ either. Compl. in mandamus of Phil D. Mills, *State ex rel. Phil D. Mills v. 9th district appellate court/judges and Magistrate Walsh (for Summit Co.)*, 2021-1104

(Ohio Sept. 7, 2021).[4] Additionally, Mills does not present any new evidence to support a claim for actual innocence.

### C.  Ground Seven is procedurally defaulted.

In his seventh ground for relief, Mills claims he was denied his Sixth Amendment Right to an impartial jury and points out various pieces of evidence that he believes support his claim.

The Sixth Amendment grants criminal defendants "[a] right to a speedy and public trial, by an impartial jury.", U.S. Const. amend. VI. Part of that constitutional guarantee includes an adequate voir dire. *See Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992). A party seeking to exclude a potential juror based on a claim of bias must demonstrate that the potential juror lacks impartiality. *Wainwright v. Witt*, 469 U.S. 412, 423 (1985). When a juror's impartiality is at issue, the pertinent question is whether the juror swore "that [they] could set aside any opinion [they] might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984).

A review of the state court record reveals that Mills attempted to raise the issue regarding the partiality of the jury in his 2019 appeal to the Ohio Supreme Court. (ECF Doc. 8-1, p. 113, 118). Mills acknowledges in his Petition that he did not raise as error the jury's impartiality in his direct appeal, nor did he raise it in his Ohio Appellate Rule 26(B) motion asserting ineffective assistance of appellate counsel. (ECF Doc. 1, p. 24). However, raising an issue for the first time in the Ohio Supreme Court that could have been raised in a direct appeal is not pursuing that claim through the state court's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at

---

[4] This Court is permitted to take judicial notice of a state court's docket. *See Kirk v. Ivey*, 2020 WL 349662, at *1 (N.D. Ohio, 2020) citing  *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 455 (N.D. Ohio 2012) (explaining that a federal court may take judicial notice of an Ohio state court case docket if the plaintiffs refer to the Ohio state court case in their complaint).

848. In his Traverse, Mills again appears to argue that his appellate counsel was ineffective for failing to assign this as error in his re-opened appeal. (See ECF Doc. 11, pp. 15-16). However, as previously stated, ineffective assistance of counsel can only serve as cause to excuse procedural default when the ineffective assistance of counsel claim is itself not procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (U.S. 2000). Because Mills never raised the issue of his second appellate counsel's ineffectiveness, he has defaulted that issue and it cannot serve to excuse default for Ground Seven.

Accordingly, I find that Mills procedurally defaulted a claim regarding whether he was tried by an impartial jury.

### D. Mills procedurally defaulted his prosecutorial misconduct claim in Ground Nine.

Mills' ninth ground for relief states that his Fifth and Sixth Amendment rights were violated when he was subjected to prosecutorial misconduct during his jury trial. In support of this ground for relief, Mills asserts that the prosecutor made improper comments during their closing arguments when they insinuated that El-Jones's testimony was untruthful. (ECF Doc. 1, p. 28-29). In his traverse, Mills asserts that he fairly presented this issue to the state court by pointing to his Application for Reopening pursuant to Ohio Appellate Rule 26(B). (ECF Doc. 11, p. 18, citing to ECF Doc 8-1, pp. 810-12). However, after his application was granted, prosecutorial misconduct was not one of the issues in his reopened appeal. Accordingly, Mills did not fairly present this issue to the state court for adjudication. Mills does not argue cause, prejudice, or assert new evidence establishing actual innocence to excuse his default. Thus, this claim is procedurally defaulted, and I recommend it be dismissed.

## VIII.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

As discussed above, each of Mills' grounds for relief are procedurally defaulted and Mills has not excused those defaults. And even if this Court were to reach the merits of Ground Four, Mills failed to argue, let alone establish, how the state court improperly applied the United States Supreme Court's *Strickland* test. Thus, if the District Court accepts my recommendations, Mills will not be able to show that my conclusions in this Report and Recommendation are debatable. Therefore, I recommend that no COA issue in this case.

## IX.   Recommendation

For the foregoing reasons, I recommend dismissing each of Mills' grounds for relief as procedurally defaulted. I further recommend that Mills be denied a certificate of appealability.


Dated: April 25, 2025

Reuben J. Sheperd
United States Magistrate Judge

43

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).